# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

CHRISTOPHER HUTCHINSON,

               Petitioner,        :        Case No. 1:14-cv-874

  - vs -                          District Judge Timothy S. Black
                                    Magistrate Judge Michael R. Merz

WARDEN, London
 Correctional Institution,

                                         :

               Respondent.

## REPORT AND RECOMMENDATIONS

      This is a habeas corpus case brought *pro se* by Petitioner Christopher Hutchinson pursuant to 28 U.S.C. § 2254.  Magistrate Judge Karen Litkovitz, to whom the case was originally referred, ordered the Respondent to answer and file the record of State court proceedings (ECF No. 2).  The Warden has responded by filing the record and moving to dismiss the Petition on the basis of procedural default (ECF Nos. 12, 13).  Petitioner then filed a Memorandum in Opposition (ECF No. 16) and the time within which Respondent could have filed a reply in support under S. D. Ohio Civ. R. 7.2 has expired.

      The reference in the case was recently transferred to the undersigned as part of workload balancing among Western Division Magistrate Judges (ECF No. 17).  It remains assigned to District Judge Black for final decision.

      A motion to dismiss involuntarily is a dispositive motion within the meaning of 28 U.S.C. § 636(b)(1)(B), requiring a report and recommendations from a Magistrate Judge to

whom it has been referred.

**Procedural History**

Hutchinson was indicted by a Highland County Grand Jury on November 13, 2012, on five counts of breaking and entering, one count of theft, and three counts of receiving stolen property (State Court Record, ECF No. 12, PageID 35)[1]. One count of receiving stolen property was dismissed on the State's motion, but the other eight counts were tried to a jury and Hutchinson was found guilty on all eight. He was sentenced to fifty-five months imprisonment.

Hutchinson appealed to the Highland County Court of Appeals which affirmed the conviction and sentence. *State v. Hutchinson,* 2013-Ohio-5334, 3102 Ohio App. LEXIS 5556 (4th Dist. Nov. 26, 2013). Hutchinson appealed, but the Ohio Supreme Court declined to exercise jurisdiction. *State v. Hutchinson*, 138 Ohio St. 3d 1468 (2014).

While his appeal to the Supreme Court was pending, Hutchinson filed an Application to Reopen his direct appeal under Ohio R. App. 26(B)(State Court Record, ECF No. 12, PageID 128, et seq.) The Fourth District Court of Appeals denied reopening. *State v. Hutchinson*, Case No. 13CA3 (4th Dist. Apr. 24, 2014)(unreported, copy at ECF No. 12, PageID 184, et seq.) Hutchinson again appealed to the Ohio Supreme Court, but that court again declined to exercise

---

[1] When any document is filed with this Court, the Court's electronic filing system affixes a unique Page Identification Number in the upper right hand corner of every page. The attention of the parties is directed to this Magistrate Judge's Standing Order of May 8, 2014, which provides in pertinent part "All references to the record in this Court must be to the filed document by title, docket number, and PageID reference. (E.g., Defendant's Motion to Dismiss, ECF. No. 27, PageID ___.) The large majority of cases before this Magistrate Judge are habeas corpus cases with large state court records and correct citation to the record is critical to judicial economy. Therefore, nonconforming filings will be stricken.

2

jurisdiction. *State v. Hutchinson*, 140 Ohio St. 3d 1418 (2014).

Hutchinson then filed his Petition for Writ of Habeas Corpus in this Court, pleading the following grounds for relief:

> **Ground One:** Petitioner was denied his right to effective assistance of appellate counsel in violation of the Sixth and 14th Amendments to the U.S. Constitution.
>
> **Supporting Facts:** Appellate counsel failed to raise meritorious claims that a reasonably competent attorney would have raised and Petitioner was prejudiced as a result. Specifically, appellate counsel failed to assert that the government failed to present sufficient evidence to sustain a conviction on two of the counts of breaking and entering. On counts alleging B&E on 9/3/12 and 9/25/12, the State presented no evidence to sustain the charges that Petitioner committed the offense of B&E.
>
> **Ground Two:** The Petitioner was denied his right to effective assistance of appellate counsel in violation of the 6th and 14th Amendments to the U.S. Constitution.
>
> **Supporting Facts:** Appellate counsel failed to raise meritorious claims that a reasonably competent attorney would have raised and Petitioner was prejudiced as a result. Appellate counsel failed to raise the issue of trial counsel's ineffective assistance when trial counsel admitted on the record that he did not review discovery prior to trial; he gave a one sentence opening statement; and he failed to object to the fact that the witnesses were never sworn in open court.

(Petition, ECF No. 1, PageID 5-6.)

In the Motion *sub judice,* the Warden asserts that this Court should not reach the merits of Hutchinson's Grounds for Relief because he procedurally defaulted in presenting them to the Ohio Fourth District Court of Appeals (ECF No. 13).

Hutchinson argues that the State is barred by *res judicata* from asserting procedural default in this Court because it defended his 26(B) Application on the merits (Memo in Opp., ECF No. 16, PageID 492). Federal courts in subsequent litigation are obliged to give prior state

3

court judgments the same effect those judgments would be given in the courts of the rendering State.  28 U.S.C. §1738, *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373 (1985); *Migra v. Warren City School District Board of Edn.,* 465 U.S. 75 (1984).  It is the state court judgment which must be given effect, not the positions the parties took before that judgment was reached.  As the Court concludes *infra*, the Fourth District reached its decision on procedural grounds and did not reach the merits.  Hutchinson cites no law and none is known to the Court under which failure to raise a procedural defense in state court proceedings bars the State from raising that defense later in habeas corpus.

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).  That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982).  Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.  *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986);  *Engle*, 456 U.S. at 110;  *Wainwright*, 433 U.S. at 87.  *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia*, 372 U.S. 391 (1963).  *Coleman*, 501 U.S. at 724.

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin*, 785 F.2d at 138; accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

Hutchinson recognizes the importance of *Maupin*, but asserts the Warden has not shown procedural default under the *Maupin* standard:

> For the reasons set forth below, the Respondent's motion to dismiss lacks merit and applying *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) to the facts of this case demonstrates that there was no procedural default and the Petitioner's claims were fully presented to the state court. State law does not clearly support the existence of the alleged procedural requirement; the alleged procedural

> requirement is not the sort of firmly established and regularly followed state practice that can prevent implementation of federal constitutional rights; and, lastly, the state procedural rule is not mandatory but only a matter of discretion, regardless of how that discretion was exercised in this particular case. For all of these reasons, the Respondents motion to dismiss should be denied and habeas relief is warranted in this case.

(Memo in Opp., ECF No. 16, PageID 487).

**First Prong of Maupin:  Existence of a State Procedural Rule**

The first prong of the *Maupin* analysis requires that the State have a procedural rule applicable to the case in issue.  The Warden asserts the relevant rule is Ohio R. App. P. 26(B)(2) which provides:

> (2) An application for reopening shall contain all of the following:
> (a) The appellate case number in which reopening is sought and the trial court case number or numbers from which the appeal was taken;
>
> (b) A showing of good cause for untimely filing if the application is filed more than ninety days after journalization of the appellate judgment.
>
> (c) One or more assignments of error or arguments in support of assignments of error that previously were not considered on the merits in the case by any appellate court or that were considered on an incomplete record because of appellate counsel's deficient representation;
>
> (d) A sworn statement of the basis for the claim that appellate counsel's representation was deficient with respect to the assignments of error or arguments raised pursuant to division (B)(2)(c) of this rule and the manner in which the deficiency prejudicially affected the outcome of the appeal, which may include citations to applicable authorities and references to the record;

6

> **(e) Any parts of the record available to the applicant and all supplemental affidavits upon which the applicant relies.**

(Emphasis supplied.) Thus we are not dealing with a procedural rule found in case law, but with a rule formally adopted by the Ohio Supreme Court under the Modern Courts Amendment.[2]

As part of the first prong of the *Maupin* analysis, the habeas court must find that the petitioner actually violated the relevant state procedural rule. Hutchinson asserts that he did not violate App. R. 26(B)(2)(e)(Memo in Opp., ECF No. 16, PageID 492-95).

Hutchinson first claims that Respondent's "reading of the rule is nonsensical and unsupported by any case law or other authority. . ." *Id.* at PageID 492-93. However, it is not Respondent's reading of the rule that is at issue, but rather than of the appellate court, which held: :

> {¶ 11} Hutchinson also submitted with his application, an affidavit, in which he swears that all of the statements, facts, and references to the record made in his application are true. Hutchinson, however, has not filed any portion of the record with his application. Rather he has filed an "Affidavit in Lieu of Record", in which he swears that due to his incarceration and indigence, he is unable to purchase multiple copies of the transcript or other records to attach to his application. Hutchinson further suggests that his inability to purchase copies of the transcript or other records renders them "unavailable" for purposes of attachment.
>
> {¶ 12} In support of his proposed assignments of error, Hutchinson refers to a pretrial conference in which an apparent discovery dispute was discussed, to the trial transcript, to the indictment, and to trial exhibits; however, as previously mentioned, he failed to attach any portion of these records to his application. The Supreme Court of Ohio has held that an applicant's failure to attach at least a copy of the portions of the record that are available to the applicant warrants denial of the application. *State v. McNeill*, 83 Ohio St.3d

---

[2] The process requires promulgation by the court and an opportunity for the General Assembly to disapprove. This parallels the federal profess under the Rules Enabling Act.

7

457, 459, 700 N.E.2d 613 (1998). "A defendant may not point us to pages or the record without ordering that the record he sent to us or copying the relevant pages and then hope that we turn his general allegation of deficiency into a particular one and then hope that we create our own explanations on how his defense could have been prejudiced." *Wolfe*, supra, at *3.

{¶ 13} Simply put, App.R. 26(B)(2)(e) requires the applicant to attach or provide the relevant portions of the record that are available to him. Here, it is apparent that the trial transcript and other record documents were available to Hutchinson, as his application is replete with citations and references to those records. Without being able to review those records, we are unable to evaluate the merits of Hutchinson's application, i.e., we cannot determine whether Hutchinson even states a colorable claim of indfcctive assistance of appellate counsel. This is especially true because the State's memorandum contra expressly refutes some of Hutchinson's assertions and contends that some of his citations to the record are taken out of context. For example, in support of his first proposed assignment of error, Hutchinson contends that the State failed to turn over at least 600 photographs from an unmanned surveillance camera that could have demonstrated his innocence, and could have been used to impeach the credibility of the State's witnesses. However, the State contends that it turned over all the photographs during pretrial discovery. Without being able to view the record and transcripts, however, we are unable to detennine the validity of either party's claims. Similarly, in his second proposed assignment of error, Hutchinson contends that the prosecutor made improper comments during closing argument specifically, that the prosecutor commented that one of the State's key witnesses was "telling the truth." In its memorandum contra, however, the State cited and quoted a passage from closing arguments which suggests that Hutchinson's assertion is untrue, or taken out of context. Again, without being able to view the trial transcript and trial record, we are unable to determine the strength of Hutchinson's arguments.

{¶ 14} Furthermore, we are not persuaded by Hutchinson's assertion that his incarceration and resulting indigence made the transcripts and record "unavailable" for purposes of attachment "App.R. 26(B)(2)(e) places the responsihility squarely upon the applicant to provide the court of appeals with such portions of the record as are available to him." *McNeil*, 83 Ohio St.3d at 459, 700 N.E.2d 613. The transcripts have been previously prepared for Hutchinson's direct appeal, and he could have requested that the

> Highland County clerk's office release the record and transcripts. *Id*. at 458-459; *Wolfe* at *3.
>
> {¶ 15}  For the foregoing reasons, we find that Hutchinson has failed to demonstrate a genuine issue regarding the effectiveness of his appellant counsel.  Accordingly, we deny Hutchinson's application to reopen his appeal.

*State v. Hutchinson*, Case No. 13CA3 (4th Dist. Apr. 24, 2014)(unreported, copy at ECF No. 12, PageID 189-91.)  Thus the Fourth District read this rule as applicable to Hutchinson's application.  That is certainly case law holding the rule applies in this case.

Federal courts are bound by state court interpretations of state law.  "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Thus even if the Fourth District's decision had been a one-line order (e.g., "The 26(B) application is dismissed for failure to comply with App. R. 26(B)(2)(e)."), this Court would have been bound to accept that as a statement of Ohio law, at least in the absence of contrary Ohio Supreme Court authority.

But the Fourth District did not file a completely conclusory decision.  Instead, it explained how Hutchinson had not complied and why his noncompliance was not excused by the reasons he gave.  It also cited Ohio case law supporting its position, *State v. McNeill*, 83 Ohio St. 3d 457 (1998), and *State v. Wolfe,* 2000-Ohio-2629, 2000 Ohio App. LEXIS 6271 (7th Dist. Dec. 21, 2000).

Hutchinson asserts *Wolfe* is inapposite because the relevant portions of the transcript in that case (i.e. of the suppression hearing) had never been filed in the court of appeals, whereas in

9

this case "the only issues relevant to this Petition refer to trial issues that were supported by the trial transcript and that was already before the court of appeals." (Memo in Opp., ECF No. 16, PageID 494-95.)  The context makes it clear Hutchinson is referring to the fact that the trial transcript had been filed on his direct appeal.[3]  This statement evinces a misunderstanding of appellate practice.  In both state and federal courts, once an appellate court decides the appeal and issues its mandate, the record is returned to the trial court.[4]  Hutchinson has no evidence that the record remained on file in the Fourth District, but only his assertion to that effect.

Hutchinson also asserts *McNeill* is inapposite because it was a capital case in which defendant was entitled to Ohio Supreme Court review as a matter of right (Memo in Opp, ECF No 16, PageID 493).  Actually, *McNeill* is directly in point.  There the Ohio Supreme Court said the relevant question under App. R. 26(B)(2)(e) is not whether the record is available to the court of appeals, but whether is it available to the  defendant:

> App.R. 26(B)(2) states in pertinent part, "An application for reopening *shall* contain * * * (e) Any parts of the record available to the applicant and all supplemental affidavits upon which the applicant relies." (Emphasis added.) McNeill failed to attach any part of the record to his application. His sole excuse is that, when he filed the application, the record was in the custody of this court. However, the question is not who had custody of the record, but whether it was "available to the applicant."

83 Ohio St. 3d at 458.


**Second Prong of *Maupin*:  Actual Enforcement of the Rule**

---

[3] "Respondent's position ignores the fact that the Court of Appeals already had the transcripts before it, as they were filed with the court of appeals as part of the record in the direct appeal." (Memo in Opp., ECF No. 16, PageID 493.
[4] Issuance of a mandate after decision may be postponed to determine if a supreme court may take jurisdiction and require the record.

The second prong of the *Maupin* analysis requires that the rule have been actually enforced against the habeas petitioner. To prove this prong, the Warden relies on the Fourth District's dismissal of Hutchinson's 26(B) Application (Motion, ECF No. 13, PageID 473-75). In that decision, the Fourth District held

> {¶ 5} App. R. 26(B)(1) permits a defendant in a criminal case to apply for reopening of his or her appeal from the judgment of conviction and sentence, due to a claim of ineffective assistance of appellate counsel. The application "shall be granted if there is a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal." App. R. 26(B)(5). If the court grants the application to reopen, it must appoint new appellate counsel if the appellant is indigent and not currently represented, and allow new merit briefs to be filed. App.R. 26(B)(6)&(7).
> \*\*\*
> {¶ 13} Simply put, App.R. 26(B)(2)(e) requires the applicant to attach or provide the relevant portions of the record that are available to him. Here, it is apparent that the trial transcript and other record documents were available to Hutchinson, as his application is replete with citations and references to those records. Without being able to review those records, we are unable to evaluate the merits of Hutchinson's application, i.e., we cannot determine whether Hutchinson even states a colorable claim of indfccitve assistance of appellate counsel. This is especially true because the State's memorandum contra expressly refutes some of Hutchinson's assertions and contends that some of his citations to the record are taken out of context. For example, in support of his first proposed assignment of error, Hutchinson contends that the State failed to turn over at least 600 photographs from an unmanned surveillance camera that could have demonstrated his innocence, and could have been used to impeach the credibility of the State's witnesses. However, the State contends that it turned over all the photographs during pretrial discovery. Without being able to view the record and transcripts, however, we are unable to detennine the validity of either party's claims. Similarly, in his second proposed assignment of error, Hutchinson contends that the prosecutor made improper comments during closing argument specifically, that the prosecutor commented that one of the State's key witnesses was "telling the truth." In its memorandum contra,

> however, the State cited and quoted a passage from closing arguments which suggests that Hutchinson's assertion is untrue, or taken out of context. Again, without being able to view the trial transcript and trial record, we are unable to determine the strength of Hutchinson's arguments.
> {¶ 14} Furthermore, we are not persuaded by Hutchinson's assertion that his incarceration and resulting indigence made the transcripts and record "unavailable" for purposes of attachment "App.R. 26(B)(2)(e) places the responsihility squarely upon the applicant to provide the court of appeals with such portions of the record as are available to him." *McNeil*, 83 Ohio St.3d at 459, 700 N.E.2d 613. The transcripts have been previously prepared for Hutchinson's direct appeal, and he could have requested that the Highland County clerk's office release the record and transcripts. *Id*. at 458-459; *Wolfe* at *3.

Hutchinson correctly notes that whether a state court has in fact based its ruling on a state procedural rule is a question of federal law on which the habeas court looks to the last explained state court judgment. *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Couch v. Jabe,* 951 F.2d 94, 96 (6th Cir. 1991)(per curiam). The mere existence of a possible procedural bar does not deprive a habeas court of jurisdiction. Rather, the state courts must actually have relied on the state procedural rule. *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). It is completely clear that the Fourth District relied on Ohio R. App. P. 26(B)(2)(e) in dismissing Hutchinson's 26(B) Application, thus satisfying the second prong of the *Maupin* analysis.

**Third Prong of Maupin:  Firmly Established**

"A procedural rule is adequate only when it is firmly established and regularly followed at the time it was applied." *Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001), *citing Rogers v.*

*Howes*, 144 F.3d 990, 992 (6th Cir. 1998); *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003). Hutchinson claims App. R. 26(B)(2)(e) is "not the 'sort of firmly established and regularly followed state practice'" required by the procedural default doctrine (Memo in Opp., ECF No. 16, PageID 495, quoting *James v. Kentucky*, 466 U.S. 341, 348-49 (1984)). However, he cites no instances of the Ohio courts failing to follow the rule and its "firm establishment" is confirmed by its embodiment in a formally adopted Ohio rule of practice. Hutchinson criticizes the Warden's reliance on *Fritz v. Knabb*, 2012 WL 996326 (S.D. Ohio Mar. 23, 2012), but in that case Magistrate Judge Sharon Ovington found a procedural default in part because the record there contained "no indication that Rule 26(B)(2)(e) was not a firmly established Ohio procedural rule at the time the Ohio Court of Appeals applied it" in that case. *Id.* at *6. That is precisely the situation here: Hutchinson has provided no evidence that the rule is not firmly established and regularly followed. Conversely, the citations of *McNeill* and *Wolfe* by the Fourth District support the contrary proposition.

**Third Prong: Adequate**

Hutchinson asserts Rule 26(B)(2)(e) is not sufficiently hospitable to federal claims as to be "adequate" under the *Maupin* analysis (Memo in Opp., ECF No. 16, PageID 499).

The adequacy of the state ground is determined by examining the State's legitimate interests in the procedural rule in light of the federal interest in considering federal claims. *Maupin, citing Henry v. Mississippi,* 379 U.S. 443, 446-48 (1965). The adequacy of a state procedural bar is itself a federal question. *Cone v. Bell,* 556 U.S. 449 (2009), *citing Lee v.*

13

*Kemna*, 534 U.S. 362, 375 (2002); *see also Coleman v. Thompson*, 501 U.S. 722, 736 (1991).

Hutchinson offers a potpourri of arguments on this point:  the rule is novel or it could not have been foreseen from prior state law.  However this rule was not invented or adopted in the course of deciding this case, but is on the face of the Rule under which Hutchinson was applying for reopening.  And it had been applied before in at least the *McNeil* and *Wolfe* cases cited above.

Apart from precedent, the Rule protects an important state interest, to wit, that a litigant should put before an appellate court the portions of the record it needs to decide the questions presented.  That is a virtually universal rule of appellate practice in the United States.

**Excusing Cause and Prejudice**

Hutchinson contends he can show excusing cause and prejudice for his failure to comply with Rule 26(B)(2)(e), to wit, his indigence.  The Fourth District considered this excuse and found it unavailing because it was clear from his citations to the record that Hutchinson had the record in front of him when he filed his 26(B) Application.

Hutchinson argues he made a good faith effort to comply with the Rule "when he filed for leave to supplement the application to reopen and attached relevant copies of the transcripts to support the amended application."  (Memo in Opp., ECF No. 16, PageID 498.)  The text of the "Supplement to Application to Reopen Direct Appeal" belies that claim.  Attached to that document is an "Affidavit in Lieu of Record" in which Hutchinson relied on the same theories he argues here:  the court of appeals already has the transcript and his poverty makes the records "unavailable" to him  (ECF No. 12, PageID 140).  He also argues no one will be prejudiced by

14

his failure because the prosecutor already has a copy. *Id.*

Two months after his first filing, he filed what amounted to an amended 26(B) application. Some transcript pages[5] are attached (ECF No. 12, PageID 168-83). The Fourth District did not consider the second application, which admittedly contained additional claims, because Ohio law does not allow a second application to reopen under Rule 26(B). *State v. Richardson,* 74 Ohio St. 3d 235 (1996), cited by the Fourth District.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge concludes Hutchinson has procedurally defaulted his claims of ineffective assistance of appellate counsel and the Motion to Dismiss should therefore be granted. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

November 6, 2015.

s/ *Michael R. Merz*<br>United States Magistrate Judge

---

[5] The pages are in minuscript® format with four pages of text to one 8.5 x 11 sheet of paper.

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).